MRS. M. A. WARREN ET AL. V. SPRINGFIELD FIRE & MARINE INSURANCE CO.

Delivered April 29, 1896.

**1. Fire Insurance—Interest of Assured—Community Property.**

The fact that the homestead, constructed with community funds, and insured in the name of the husband, is situated upon the separate property of the wife, does not avoid the policy under a provision that it shall become void if the interest of the assured be "other than entire, unconditional and sole ownership of the property."

**2. Same—Proof of Loss—Abandonment of Wife by Husband.**

Where community property is insured in the name of the husband, and he abandons his wife before the destruction of the property by fire, it is proper for the wife and a mortgagee beneficiary named in the policy to furnish proofs of loss, although it is stipulated that "proofs of loss shall be made by the party originally insured."

APPEAL from Dallas. Tried below before Hon. EDWARD GRAY.

*Field, Brown & Camp* and *John Bookhout*, for appellants.—A representation by the husband that his interest in the property was the entire, unconditional and sole ownership, when he held a life estate in the lot and a community interest in the house insured, standing on the lot, the legal title to which lot is in the wife, and the house and lot together at the time constituted their homestead, is not a representation as to the title, and is not such a misrepresentation as will avoid the policy, in the absence of fraud or intentional deception, calculated to mislead the defendant and increase the risk. Insurance Co. v. Crawford, 15 S. W. Rep., 1058; Insurance Co. v. Dyer, 1 Posey U. C., 443; Jones v. Jones, 15 Texas, 148; Insurance Co. v. Lancaster, 28 S. W. Rep., 127; Curry v. Insurance Co., 10 Pick., 535; De Armand v. Insurance Co., 28 Fed. Rep., 603.

*Morgan & Thompson*, for appellee.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by the appellant Mrs. M. A. Warren against the appellee on the insurance policy described in the agreement hereinafter copied. Mrs. Forest L. Williams intervened, admitting the right of the plaintiff to recover to the extent of the indebtedness of the former to the latter, asking judgment on the

policy for the residuum. The case was tried on the agreement set out below, and judgment rendered in favor of the insurance company, from which we have this appeal.

The following is the agreement:

"It is agreed by and between M. A. Warren and J. F. Warren, plaintiffs herein, and Mrs. W. J. Williams, intervenor herein, and the Springfield Fire & Marine Insurance Company, defendant herein, that the following facts are admitted in this cause; that upon these facts said suit shall be tried and judgment rendered thereon, provided that either party may introduce additional facts not inconsistent herewith:

"It is agreed, first. That on July 1, 1890, the intervenor herein, Mrs. W. J. Williams, who was then a feme sole, named Miss Forest L. Meek, purchased the land upon which the insured building was situated from the Rapid Transit Land Company, by general warranty deed, duly recorded in volume ——, page ——, deed records, Dallas County, paying therefor $300 cash, and executed a note for the sum of $2700, which said note is now owned by said Mrs. M. A. Warren, plaintiff.

"Second. That thereafter, on, to-wit, the 26th day of November, A. D. 1890, Miss Forest L. Meek intermarried with one W. L. Williams, to whom the insurance policy hereinafter described was issued.

"Third. That after said marriage the said W. J. Williams and his wife erected upon said lot so purchased the house insured, as their homestead, and that they continued to occupy said house as their homestead until its destruction by fire.

"Fourth. That on the 23rd day of April, A. D. 1892, W. J. Williams, the husband of Forest L. Meek, procured to be issued by the Springfield Fire & Marine Insurance Company of Springfield, Massachusetts, its policy of insurance No. 3389, for the sum of $1000 which, in so far as is material to this suit, is as follows, viz:

"That said insurance company, in consideration of $20, 'does insure W. J. Williams against all direct loss or damage by fire to the amount of $1000 on his one-story, frame, shingle roof dwelling house, located on south side of Grand Avenue, on lots one and two, block one, Edgewood addition to Dallas; said policy beginning on the 23rd day of April, A. D. 1892 at noon, and running for a period of three years, expiring April 23, A. D. 1895, at noon.' That said policy provides: 'Any omission to make known every fact material to the risk shall make this policy null and void; or if the interest of the insured in the property be any other than entire, unconditional and sole ownership of the property, for the use and the benefit of the insured. Persons sustaining a loss by fire shall forthwith give immediate notice in writing to this company, and within 60 days after the fire, render a particular account of said loss, signed and sworn to by them, stating what insurance there was on the property, for what purpose and by whom the building insured was occupied; and the loss shall not be payable until 60 days after proofs of the same as required by this company have been made by the assured and received by this company, at its office in Chicago; and if this

policy is made payable, in the case of loss, to a third party, or held as collateral security, proofs of loss shall be made by the party originally insured. This policy is made and accepted upon the above expressed conditions.'

"It is further agreed that there was attached to said policy on the 21st day of September, A. D. 1893, at the request of said W. J. Williams, the following slip: 'Any loss that may be ascertained or proven to be due W. J. Williams, the assured, under this policy, shall be made payable to Mrs. M. A. Warren as her interest may appear. Attached to policy No. 3389 of the Springfield Fire & Marine Insurance Company, this September 21, 1893.'

"Fifth. At the time said insurance policy was applied for and issued, the insurance company was not advised that said property was the property of Mrs. W. J. Williams, and had no knowledge that said property was the separate estate of Mrs. W. J. Williams.

"Sixth. That on the 20th day of June, A. D. 1894, at the hour of 2 o'clock a. m., the said house described in said policy was totally destroyed by fire.

"Seventh. That thereafter, on or about the 26th day of July, A. D. 1894, Mrs. M. A. Warren, joined by her husband, J. F. Warren, and Mrs. W. J. Williams, nee Forest L. Meek, made and swore to a proof of loss, and mailed the same to the defendant herein at its Chicago office. The same was duly received by the defendant.

"Eighth. That on or about August 1, A. D. 1894, the defendant objected to said proof of loss, because the same was not made out or signed and sworn to by the insured, W. J. Williams, and declined to receive the same as satisfactory proof under said policy.

"Ninth. That no additional proof of loss was furnished under said policy.

"Tenth. That the day previous to the fire the said W. J. Williams, the assured, left the city of Dallas and has abandoned his wife, and his whereabouts are unknown.

"Eleventh. That there was on said building at the time of said fire insurance to the amount of $2650.

"Twelfth. That the interest of Mrs. W. A. Warren in said insurance at this date is $2603.75.

"It is agreed that the entire original policy may be considered in evidence in this cause, and the same is hereto attached, marked 'Exhibit A,' and made a part hereof.

"Thirteenth. It is agreed that the value of the insured property destroyed by fire was $3064.33."

This agreement was signed by counsel for all parties.

Under the agreed facts, the first question presented is: Does the fact that the building was situated on land which was the separate property of the wife of the insured annul the policy by reason of the stipulation that it should become void, "if the interest of the insured be any other than entire, unconditional and sole ownership of the property?"

Preliminary to a discussion of this question, it may be well to notice some elementary principles of construction applicable to contracts of this character. It is a primal rule that forfeitures are not favored either in law or equity; and, as a corollary to it, provisions for forfeitures are to receive, when the intent is doubtful, a strict construction against those for whose benefit they are introduced. Webster v. Insurance Co. (Ohio), 42 N. E. Rep., 547; West v. Insurance Co., 27 Ohio St., 1. "A forfeiture is never carried by construction beyond the clear expression of the contract creating it; and if it be left in doubt, in view of the general tenor of the instrument and the relation of the contracting parties, whether given words were used in an enlarged or a restricted sense, other things being equal, that construction should be adopted which is most beneficial to the promissee. This rule has been uniformly applied to conditions and provisions in policies of insurance, on the ground that, though they are inserted for the benefit of the underwriters, their office is to limit the force of the principal obligation." Webster v. Insurance Co., supra; Yeaton v. Fry, 5 Cranch, 341; Palmer v. Insurance Co., Fed. Cas., No. 10,698; Pelly v. Assurance Co., 1 Burrows, 349; Western & A. Pipe Lines v. Insurance Co., 145 Pa. St., 345; 22 Atl. Rep.,' 665; Chandler v. Insurance Co., 21 Minn., 85; Riddlesbarger v. Insurance Co., 7 Wall., 386; Baley v. Insurance Co., 80 N. Y., 21; Burleigh v. Insurance Co., 90 N. Y., 221; Griffey v. Insurance Co., 100 N. Y., 417, 3 N. E. Rep., 309.

The principal obligation contracted for in the policy was indemnity against the loss of the building by fire, and the clause making the entire, unconditional and sole ownership of the assured a requisite to its validity was to limit the appellee's liability to one having such interest or ownership in the property insured. It was described in the policy as "his one-story, frame, shingle-roof dwelling house," the words themselves signifying possession and ownership; and if it was not "his," the words so characterizing it amount to a misrepresentation of a material matter in the contract. Having made such representation, and contracted for indemnity against the destruction of his property, he would not, under the contract, be entitled to the indemnity if it belonged to another. The clause referred to in the policy served to emphasize the fact that, to entitle the insured to the indemnity contracted for, the property must be owned by him, and to declare the legal effect of the policy if the representation of ownership should prove untrue. It was the dwelling insured, and not the land upon which it stood.

Is, then, the "interest" of the husband, under the laws of this State, in a dwelling used and occupied by him as the home of himself and family, erected and to be paid for with community funds, upon land which is the separate property of his wife, other than the "entire, unconditional and sole ownership of the property," within the meaning of such words as they are used in the contract of insurance? A decision of this question requires, to some extent, consideration of our law respecting separate and community property, as well as of homestead

rights.  As long as the marital relation continues, the separate prop-
erty of the wife is under the sole management and control of the hus-
band; and if realty, she can neither alienate nor dispose of it, without
his consent and concurrence; and his interest in it during her relation-
ship is such as to make the rents derived from it the property of the
community.  When the relationship is terminated by the death of the
wife, if she died intestate, leaving a child, children, or their descend-
ants, the husband takes one-third of the personal estate and an estate
for life in one-third of the land; if she have no child or children, or
their descendants, he is entitled to all personal estate and to one-half of
the lands without remainder to any person.  Except as to his commu-.
nity interest in the rents, in any of these events his interest is contin-
gent upon his survivorship; not so, however, as to his homestead inter-
est.  It is fixed, definite, and determinate.  It may exist in his wife's.
separate property, as well as in his own or the community's, and is as.
fixed, definite, durable and absolute in one instance as in the other.
Without his consent, neither his wife nor the law can deprive him of or
abridge his interest in it; for his right to it is imbedded in the constitu-
tion which shields and protects him in it as long as he lives.  While
the status of the land as the separate property of the wife remains un-
changed, it is overridden by and charged with this homestead right of
her spouse, which continues if he survives after her death.  In other
words, this homestead right is an absolute, unconditional estate for life,
if the husband chooses to avail himself of it by continuing its use and
occupancy as a homestead.  It is true the wife also has a homestead in-
terest in common with her husband, though this right is not, like his,
absolute; for he, by acquiring another homestead for his family, could
divest the wife of such homestead interest, while she, as long as the
marital relation subsists, cannot, contrary to her husband's will, aban-
don one homestead and acquire another.  If the dwelling insured had
been on community property or on the separate realty of the husband,
his homestead right in it would not have been superior to what it was
when the policy of insurance was issued and the house destroyed; for
in either of those events the wife would have had an homestead interest
just as she had when the building was on her land.  We do not think
that, if such had been the case, it would be even contended by the ap-
pellee that the wife's homestead or community interest would, within
the meaning and intention of the clause quoted, make the interest of the
insured any other than entire, unconditional and sole ownership.  Cer-
tainly such contention could not be successfully made.

In the case of  East Texas Fire Insurance Co. v. Crawford (16 S. W.
Rep., 1069), where, in the application for insurance, plaintiff was asked:
"Is your title to the above property absolute?" and he answered "Com-
plete," and it was stipulated in the policy that it "shall become void if
the assured is not the sole and unconditional owner of the property, or
if his interest in the property is not truly stated in the policy," it was
held, the house insured and the land on which it stood being the home-

stead of the plaintiff, that the policy was not avoided by the fact that an undivided half interest in the fee had vested in the children of his wife by reason of her death, when the policy was issued; because he had the right to use and occupy the whole of the homestead unconditionally as long as he lived, and that therefore he had made no such misrepresentations as would prevent his recovery. In one sense his representations were not true, but within their meaning as used and intended in the policy they were; and, within its contemplation, his interest was the entire, unconditional and sole ownership of the building.

Such, we believe, under a proper construction of the policy, was the interest of the insured in this case. The building having been erected after the marriage on the wife's separate property, and not paid for with her separate means, was community property (Rice v. Rice, 21 Texas, 66); and upon principle, and under the Crawford case, we hold that the fact that the building was situated on land which was the separate property of the wife does not avoid the policy, by reason of the stipulation that it shall become void if the interest be any other than the entire, unconditional and sole ownership of the property.

The husband having abandoned his wife the day previous to the fire, and his whereabouts being unknown, it was proper for the wife and Mrs. Warren, with her husband, to make and furnish proof of loss, and it was the duty of the appellant to receive and act upon such proof; for the wife, under the circumstances in relation to the provision in the policy requiring proof of loss, stood in the place of the husband, and Mrs. Warren was the beneficiary under the contract.

Applying the principles here announced to the facts agreed upon, it follows that the court below erred in its judgment. It is therefore set aside, and judgment is here rendered in favor of the appellant Mrs. M. A. Warren against Springfield Fire & Marine Insurance Company for $1000, with interest thereon at the rate of six per cent per annum from the 20th day of June, 1894, together with all costs incurred in the court below as well as in this court; and as it appears that it will require more than the amount of the loss covered by this policy to pay the demand of Mrs. Warren against the intervenor, it is ordered that the intervenor, Mrs. Forest L. Williams, take nothing by this suit, and that she pay all costs incurred by reason of her intervention.

Reversed and rendered for appellant Mrs. M. A. Warren.

*Reversed and rendered.*