**REPUBLIC INS. CO. v. HOYLE et al.**
(No. 3530.)

Court of Civil Appeals of Texas. Texarkana. March 29, 1928.

Rehearing Denied April 19, 1928.

1. **Appeal and error ⬗877(7)—Whether assignee or intervener claiming proceeds of fire policy recovered held no concern of insurer, where it would be protected by judgment.**

In assignee's action on fire insurance policy, wherein insured's wife intervened, claiming that property was paid for partly with her funds, *held* that it was no legal concern of insurer whether assignee or intervener, as between themselves, was awarded sum under policy, where all parties having any interest or claim whatever in proceeds of policy were before court and would be concluded by judgment rendered, and insurer would be protected thereby.

2. **Insurance ⬗378(1)—Insurer held estopped from asserting conveyance of insured premises as defense in suit on fire policy, in view of agent's knowledge.**

In suit on fire policy, which was assigned with conveyance of premises to secure indebtedness with knowledge of insurer's agent, *held*, that insurer was estopped from asserting conveyance as defense.

3. **Insurance ⬗282(5)—Fire policy, requiring insured to have sole ownership, held void, where property was purchased partly with wife's separate funds.**

Fire insurance policy, taken out on homestead by husband, which provided that insured should have unconditional and sole ownership, or policy would be void at its inception, *held* void, where property was originally purchased partly with community money and partly with separate money of insured's wife.

4. **Insurance ⬗282(5)—Sole ownership clause of fire policy is broken, if husband insures family residence on wife's separate property.**

Sole and unconditional ownership clause of fire policy is broken, if husband alone insures family residence located on separate property of wife, or located on realty paid for partly by separate funds of wife and partly by community funds.

5. **Insurance ⬗282(5)—Husband may insure family residence without violating sole ownership clause, if property is located on his separate or community realty, or purchased with community funds.**

Husband alone may insure family residence without violating sole and unconditional ownership clause of fire policy, if property is located on his separate realty, or entirely on community realty, or if paid for wholly out of community funds, although located on separate property of wife.

6. **Insurance ⬗219—Insurer, without knowledge, may assert breach of sole ownership clause against assignee of fire policy not a real purchaser and owner of insured property.**

Insurer in fire policy taken out by husband on homestead providing policy should be void unless insured was sole and unconditional owner, where residence was purchased partly with community funds and partly with separate funds of wife, of which insurer and its agent had no knowledge, *held* not estopped to set up breach of clause against assignee of policy who was not a real purchaser and owner of insured property, and hence subject to same defenses as assignor.

Appeal from District Court, Grayson County; Silas Hare, Judge.

Suit by J. F. Hoyle against the Republic Insurance Company and another. Mrs. R. C. Hoyle and her husband filed a plea of intervention. Judgment for defendant J. R. Fleming and named intervener, and the defendant appeals. Reversed and rendered.

On April 22, 1926, the appellant issued to R. C. Hoyle a policy of insurance to an amount not exceeding $2,500, providing against loss or damage by fire to a one-story frame building in Whitewright. On April 29, 1926, R. C. Hoyle had the following indorsement made out and attached to the policy, namely:

"The property insured under this policy is hereby transferred by actual sale to J. F. Hoyle."

The indorsement was signed by the local agent of the insurance company. On September 14, 1926, the building was totally destroyed by fire while the policy was in force. Thereafter, after the company had refused payment, the appellee J. F. Hoyle brought the suit on the policy, claiming in the petition that the premises were conveyed to him on April 29, 1926, and that R. C. Hoyle had transferred and assigned to him the policy of insurance. The appellee made J. R. Fleming a party defendant also, alleging that he was entitled to assert an interest in the amount of the insurance, as holder of a vendor's lien note, in the sum of $1,000, in virtue of a mortgage payable clause duly attached as a rider

---

⬗For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

on the policy, of date April 29, 1926. The prayer was for judgment for the full amount of the insurance in favor of J. F. Hoyle and J. R. Fleming, "in accordance with their interests, respectively, as ascertained." J. R. Fleming appeared, adopting the pleading of the plaintiff, and setting up the particular interest that he claimed in the insurance. By leave of the court, Mrs. R. C. Hoyle, joined by her husband, filed a plea of intervention, setting up the issuance of the policy to R. C. Hoyle and the loss of the building by fire, and claiming that the lot on which the building was located was partly purchased and paid for with community funds of herself and husband, and mostly out of the separate means of Mrs. R. C. Hoyle, and that the building and lot were occupied and used as their family homestead; that the conveyance of the premises to J. F. Hoyle on April 29, 1926, was purely a pretended conveyance of the homestead, and so understood by all parties thereto, for the purpose of borrowing money thereon; that the pretended lien note executed and transferred to J. R. Fleming was in pursuance of the arrangement to borrow money on their homestead; that the agent of the insurance company at the time was fully apprised of, and knew all the facts and circumstances of the transaction. She claimed all of the insurance, except $1,000, which was asserted to be payable to J. R. Fleming. The prayer was "that any sum recovered against the insurance company be decreed to her, or, if to plaintiff, then to him to the use and benefit of this intervener." The insurance company, after exceptions to the pleadings, pleaded a general denial, and specially set up, in avoidance of the policy, the two following stipulations in the policy:

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject-matter thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject-matter thereof, whether before or after a loss.

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the interest of the insured in the property be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple."

The plaintiff replied to the answer of the insurance company, pleading waiver through knowledge of the facts and estoppel by acts and conduct.

After hearing the evidence, the court peremptorily instructed the jury to return a verdict as follows: Against the insurance company for the amount of the policy with interest, $2,525; and of said sum in favor of J. R. Fleming for $1,064.21, the amount of his note with interest, and in favor of Mrs. R. C. Hoyle for the remainder of $1,460.79. Judgment was entered in keeping with the above verdict. The insurance company alone objected to the judgment, and has appealed therefrom.

The evidence was practically without dispute. The house was totally destroyed by fire, and the amount of insurance was less than the real value of the house. Proofs of loss were timely made, and payment was refused on the grounds appearing in the suit. The indorsements on the policy were duly made and signed by the local insurance agent. R. C. Hoyle purchased the property on which the insured building was located from Ben Dyer in November, 1919. The purchase price of the property actually paid was $2,000 out of the separate funds of Mrs. R. C. Hoyle, and $750 out of the community funds of Mr. and Mrs. R. C. Hoyle. The conveyance was a warranty deed in the name of R. C. Hoyle conveying the land in fee simple. The building and lot were thereafter occupied and used, as intended at the time of purchase, as the family homestead of Mr. and Mrs. R. C. Hoyle. The premises were actually occupied as homestead at the time of the insurance. For the sole purpose of borrowing $1,000 and securing its payment, Mr. and Mrs. R. C. Hoyle made a conveyance of their homestead, which at the time they were actually occupying, to J. F. Hoyle, reciting $1,750 as paid and a note for $1,000, retaining a lien to secure it. The deed was placed of record. J. F. Hoyle and Mr. and Mrs. R. C. Hoyle admitted as a fact that the sale was merely a pretended one, for the sole purpose stated of borrowing $1,000. There was no money paid as recited, and there was no actual, outright sale of the property to J. F. Hoyle, as all the parties to the deed admitted. R. C. Hoyle then, as he says, "sold the note to Mr. Fleming." The money obtained was, as Mr. Hoyle stated, "used for living expenses and things of that kind for myself and family." Mr. J. R. Fleming testified:

"When I let Mr. and Mrs. R. C. Hoyle have the money on this property, I did not know it was not an actual sale of the property. I thought the sale was all right."

There is no evidence showing that he did know to the contrary, although Mr. Fleming knew of the occupancy of the place as a homestead by Mr. and Mrs. R. C. Hoyle. R. C. Hoyle testified that he informed the local insurance agent fully of the transaction relating to J. F. Hoyle at the time he had the indorsement made on the policy. He testified:

"I told him (the agent) that I was deeding it (the property) to J. F. Hoyle for the purpose of getting a loan on the place, and that Mr. Fleming was making the loan, and I wanted him to take care of the policy. I did not tell him I was going to keep the title. I don't think I

told him my wife had no interest in the property and that she had furnished no money in the purchase of the property. I never did tell him that."

The agent testified:

"I did not know at the time of the issuance of the policy that Mrs. Hoyle had any interest in the title to the property. There is shown on the policy a transfer from R. C. Hoyle to his brother J. F. Hoyle. R. C. Hoyle came to me and told me that he wanted the policy transferred to his brother, with the loss payable clause to Mr. Fleming. That he was doing it in order to put a loan on the property. He did not tell me that he did not intend to pass the title to the property. * * * He told me that he was transferring it for the purpose of getting a loan on it and putting a lien on it. As well as I remember, Mr. and Mrs. R. C. Hoyle have been living on that place five or six years. I never had anything to do with J. F. Hoyle. I believed that the deed which was executed by R. C. Hoyle and wife to J. F. Hoyle was for the purpose of getting a loan on the homestead of R. C. Hoyle and wife."

The evidence is ample to show that the agent had knowledge of the purpose of the conveyance by R. C. Hoyle and wife to J. F. Hoyle, and with such knowledge consented to the assignment of the policy to J. F. Hoyle, and afterwards dealt with R. C. Hoyle as the person having the real interest in the insurance, in vacancy permit, and in proofs of loss. There is no evidence, however, tending to show that the agent knew of, or had information that, Mrs. Hoyle's separate money had partly paid for the property.

H. P. Abney, of Sherman, and E. G. Senter, of Dallas, for appellant.

J. W. Hassell and F. J. Scurlock, both of Dallas, for appellees.

LEVY, J. (after stating the facts as above). The propositions of the appellant present, in effect, the points in view, namely: (1) The policy was void under its terms from its inception, in that, at the time the policy was issued, the interest of R. C. Hoyle in the property insured was not "other than unconditional and sole ownership." (2) The intervener was not entitled to recover in any event, in that she was not made a beneficiary by express provision, and the element of privity of contract was otherwise absent.

[1, 2] If the appellant be liable at all on the policy, the second point above may not be available in the facts. It is admittedly shown that the policy was assigned to J. F. Hoyle on April 29, before the fire. The assignment was indorsed on the policy. Thus the policy stood in the name of J. F. Hoyle by actual transfer, with the assent of appellant's agent, who was authorized to agree to such assignment. The intervention of Mrs. Hoyle, joined therein by her husband, was in legal effect purely a claim by her against J. F. Hoyle, the assignee, to the extent of $2,000,

upon the facts alleged, in the event such assignee recovered on the policy. Her claim was not in the nature of a suit on the policy directly against the appellant. Under her pleading, any recovery by her against the assignee was entirely dependent upon the recovery on the policy by the assignee. If the assignee should fail of recovery, then the intervener likewise would fail of recovery. In such character of controversy it was of no legal concern to the insurance company as to whether the assignee or the intervener, as between themselves, should be awarded the sum payable under the policy, provided the appellant would be legally protected thereby. All the parties having any interest or claim whatever being before the court, they would be concluded by the judgment rendered, and the appellant would be legally protected thereby. J. F. Hoyle, as original plaintiff, had the right to bring the suit, and could maintain it against appellant, if the appellant were liable at all on the policy, because he had an interest in the protection of his outstanding note to Fleming, in the insurance, as assignee with knowledge and assent of appellant. Also the appellant may not avoid liability on the policy merely because of the conveyance to J. F. Hoyle by R. C. Hoyle and wife, as from the plain evidence the appellant was estopped from asserting such defense by reason of its knowledge and conduct through its agent.

[3] As to the first point, the evidence is undisputed that the realty was purchased partly with the separate money of Mrs. Hoyle and partly with community money, and the building was upon the realty at the time of the purchase. The policy covered the one item of the building, and there was no personal property involved. The policy expressly provided that the interest of R. C. Hoyle, the assured, in the insured property should be that of "unconditional and sole ownership," or otherwise the policy would "be void" or ineffectual at its inception. It is believed that the facts in the instant case bring it within the ruling in German Ins. Co. v. Hunter (Tex. Civ. App.) 32 S. W. 344. In that case the property insured was a house situated upon realty purchased partly with separate funds of the wife and partly with community funds. The deed, as well as the insurance, was taken in the name of the wife. The wife brought suit on the policy, alleging that the property was her "separate property." It was determined upon appeal that "the allegation that the property was the separate property of Mrs. Hunter is not sustained," and "she could not, in this case, recover upon the allegation that it was her separate property." Although the ruling was not made in precise words that the sole and unconditional ownership clause was broken, yet, in meaning and effect, it was a direct ruling that, as the interest of the wife in the

property was not that of sole and unconditional ownership, she could not maintain a suit on the policy, although joined pro forma by the husband. The ruling would be the same, and not different, whether, as in that case, the deed was in the name of the wife, or, as in the case at bar, the deed was in the name of the husband.

That ruling is not at variance, but consistent, with Crescent Ins. Co. v. Camp, 71 Tex. 503, 9 S. W. 473, to the point that a surviving partner cannot insure the firm's property under the sole and unconditional ownership clause of the policy. The mere fact that the house in the case at bar was used and occupied as "a family residence" would not be controlling, according to Sun Office Ins. v. Beneke (Tex. Civ. App.) 53 S. W. 99. In that case the insurance was in the name of the wife. The building was located upon the separate property of the wife, and was used and occupied as the family residence of the husband, wife, and children. The point was directly made that the sole and unconditional ownership clause was broken because of the marital relation and the use and occupancy of the building as "a family residence." The court held to the contrary, giving as the reason therefor that in the facts the husband "was in no sense a partner in the ownership," and his right of control and management of the family residence "would not affect the singleness of her ownership." Also see Bacot v. Ins. Co., 96 Miss. 223, 50 So. 729, 25 L. R. A. (N. S.) 1226, Ann. Cas. 1912B, 262. A similar ruling was made in St. Paul Fire & Marine Ins. Co. v. McQuary (Tex. Civ. App.) 194 S. W. 491.

[4, 5] In the Beneke Case there was distinguishment made between that case and Warren v. Ins. Co., 13 Tex. Civ. App. 466, 35 S. W. 810, and East Texas Fire Ins. Co. v. Crawford (Tex. Sup.) 16 S. W. 1069, each involving "homestead" and family residence. In the Crawford Case the house and 200 acres on which it stood, part of a 400-acre community tract, was the homestead of the husband at the time of the insurance and prior thereto at the time of the death of his wife. It was held that the sole and unconditional ownership clause was not broken, in view of the fact that the husband had the legal right, after the death of the wife, to reside upon and use the whole of the 200 acres as homestead unconditionally as long as he lived. That ruling related entirely to community property and the rights of the husband therein under the law. According to the Warren Case, based on the Crawford Case, the house was built by the husband, after marriage, upon realty of the wife, acquired before her marriage. But, as the house was built after marriage, and wholly paid for with community funds, the court held the sole and unconditional ownership clause was not broken. The legal reason for the ruling was that the community

was entitled to be reimbursed for the improvement to the value of the house, and the husband, having under the law the absolute control and disposition of the community, had an insurable interest in the dwelling house to the full amount of its value. The loss of the house was a loss directly to the community estate, over which the husband had absolute control and management. The fund arising from the policy would occupy the same status which the house did; that is, community property. In other words, the family residence was "wholly community property," and the husband alone had the legal right to insure it against loss by fire. The facts in these cases are clearly quite different from those in the instant case. Thus, as appears, it is the holding of the cases in this state that the sole and unconditional ownership clause of the policy is broken, if the husband alone insures the family residence located upon separate property of the wife or located upon realty paid for partly by separate funds of the wife and partly by community funds. The husband alone may insure the family residence without violating such clause, if located upon his separate realty or entirely upon community realty, or if the family residence be paid for wholly out of community funds, although located upon the separate property of the wife.

A different ruling is not made in Continental Fire Ass'n v. Wingfield, 32 Tex. Civ. App. 194, 73 S. W. 847, nor was the point determined in that case similar to the point at bar. In that case the point made was merely that in the facts the insured "had no insurable interest" in the property. The court held that the point was not well taken, as in the facts the husband did have such an interest as he could protect by insurance. It was not held, nor undertaken to be held, that the "sole and conditional ownership" clause was not broken. That the assured, in an action on the policy, must allege and prove an insurable interest in the property insured may be regarded as settled. He may have an insurable interest less than ownership. 1 Wood, Insurance, § 281, p. 645. And, if the policy does not expressly require "unconditional and sole ownership" by the insured, he may not be held to have broken such clause by an interest less than that. In the Wingfield Case, supra, that insistence was not made and urged. Therefore such case is not in conflict with any of the other cases referred to above.

The cases further cited of Georgia Home Ins. Co. v. Brady (Tex. Civ. App.) 41 S. W. 513, and Merchants' Ins. Co. v. Dwyer, 1 Posey, Unrep. Cas. 441, are not comparable to the present facts. Personal property alone was involved in those cases, and the ruling therein was rested upon the right of the husband under the law to the sole management and control of the wife's separate personalty and as well the community. The statute

was held specially controlling concerning the nature of such estate and the husband's control thereof.

[6] Estoppel on the part of the appellant to assert against the insured his breach of the sole and unconditional ownership clause may not be made available in the present case. There is no pretense of evidence that the agent of appellant had notice or information of the fact of Mrs. Hoyle's separate money having paid the most part of the purchase price of the land. The deed did not so disclose, and the agent positively says he did not know of that fact. Mr. Hoyle does not testify that he told the agent about it. And, therefore, the appellant would not be precluded from availing itself of the defense against the assignee of the violation of such clause of the policy by the original insured, because the assignee was not, as admitted by all parties, in fact and intention, a real purchaser and owner of the insured property. In such circumstances, the assignee was subject to the same defenses as the assignor. There was no issue of fact to be determined by the jury, as correctly held by the trial court.

The judgment is reversed, and judgment is here rendered for the appellant, with all costs of appeal and of the trial court.